AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>MICHAEL BARNES<br><br>*Defendant(s)* | ) ) ) ) ) ) ) )<br>Case No. 3 12 70139 |

FILED
2012 FEB -3
WIEKING
DISTRICT COURT
CALIFORNIA

MEJ

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __December 8-25, 2011__ in the county of __San Mateo__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sec. 846 | Conspiracy to Possess With Intent to Distribute a Controlled Substance |

Maximum Penalties: 20 years' imprisonment; $1 million fine; lifetime supervised release, with a minimum of 3 years' supervised release; $100 special assessment.

This criminal complaint is based on these facts:

See attached affidavit of Panya Somnhot

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Panya Somnhot. Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __2-2-12__

_____
*Judge's signature*

City and state: __San Francisco, California__  Hon. Maria-Elena James U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Panya Somnhot, Special Agent, Federal Bureau of Investigation (FBI), first being duly sworn, do depose and state:

### I. INTRODUCTION

1. I make this affidavit in support of a criminal complaint against **MICHAEL BARNES** ("BARNES") for a violation of Title 21, United States Code, Section 846, conspiracy to distribute and possess with intent to distribute a controlled substance.

2. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and the circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a complaint, it does not set forth each and every fact that I, or others, have learned during the course of the investigation.

### II. AGENT BACKGROUND

3. I am employed by the Federal Bureau of Investigation ("FBI") as a Special Agent and have been so employed for three and a half years. I am currently assigned to work gang and narcotics matters on the San Francisco FBI's Safe Streets Gang Task Force.

4. Included in my duties is the enforcement of all laws related to illegal possession of firearms, narcotics for sale, and gang related offenses. I have received law enforcement training throughout my employment. During the course of my employment, I have participated in dozens of gang, firearms, and/or narcotics investigations and arrests and spent time talking with other law enforcement officers regarding prostitution investigations

1

5.  In the course of the investigation described herein, I have consulted with other federal agents and local law enforcement officers who have written affidavits for or participated in the application for and execution of hundreds of search and arrest warrants over the course of their careers.

6.  As a Special Agent of the FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States.

### III. APPLICABLE LAW

7.  Title 21, United States Code, Section 846, prohibits conspiracy to distribute and possess with intent to distribute a controlled substance.

### IV. BACKGROUND OF INVESTIGATION

8.  East Menlo Park, California, a/k/a, Belle Haven, is adjacent to East Palo Alto (EPA), California. The two areas combined are approximately three square miles. Both East Menlo Park and EPA are located in San Mateo County on the peninsula south of San Francisco. There are several criminal streets gangs that claim territory in or near, and operate within, East Menlo Park and EPA, including, but not limited to, the Taliban Street Gang (TSG), Anybody Can Get It Gang (ABCG), Yellow Tape Gang (YTG), Menlo-Mid-Town (M&M), Da Village Street Gang (Da Vill), G-Town Street Gang (G-Town), and the Sacramento Street Gang (SSG). These gangs engage in narcotics trafficking and acts of violence. Although these criminal street gangs claim East Menlo Park and EPA, and/or nearby areas as their territory, members and associates of these gangs commit crimes in other parts of the San Francisco Bay Area including San Mateo County (Daly City, San Mateo, Redwood City), Alameda County (Oakland, Fremont, Hayward, San Leandro, Union City), Santa Clara County (San Jose, Mountain View, Palo Alto), San Francisco County, and San Joaquin County (Stockton). Members and associates have also been involved in crimes in other states outside of California, including New York, Louisiana, Georgia, Washington State, Nevada, and Texas. Over the past year and a half, the FBI, in connection

with local law enforcement agents and officers, has been investigating members and associates of the street gangs listed above, leading to the evidence of criminal activity described below.

9. On November 30, 2011, the Honorable Richard Seeborg, District Court Judge for the Northern District of California, signed an order authorizing the interception of wire and electronic communications occurring over Target Telephone Two, (650) 444-9775 (**TT-2**) used by Benjamin WILLIAMS ("WILLIAMS") for a 30-day period. Numerous conversations were intercepted between WILLIAMS and BARNES during which the purchase and sale of crack cocaine was discussed. Call summaries were prepared by agents and officers contemporaneously with the calls intercepted on **TT-2**. More detailed transcriptions of the conversations will be prepared, but because the investigation is on-going, more detailed transcripts are not yet available. Therefore, I have noted in parentheses the particular source of each conversation detailed below ("summary" or "transcription"). Although care was taken to ensure the accuracy of the call summaries and transcripts, subsequent review of the summaries and transcripts may result in slight changes to the transcript, summaries, or my analysis of the content of the conversations.

10. I believe that BARNES, his customers, and his suppliers use coded language in order to conceal the true nature of their conversations. Therefore, in an attempt to explain the conversations detailed in this Affidavit, I have expressed my opinions regarding the nature of these conversations. My opinions are not facts and are based on my training and experience and my discussions with other law enforcement officers familiar with narcotics trafficking investigations.

## V. FACTS ESTABLISHING PROBABLE CAUSE

### A. Calls between TT-2 and Michael BARNES Regarding Suspected Narcotics Trafficking

11. On December 8, 2011, at approximately 10:59 p.m., a call was intercepted from 650-315-3907, a Nextel cellular telephone number subscribed to in the name of Michael BARNES, to **TT-2** (Line 235), subscribed to in the name of Benjamin WILLIAMS. The call goes to voicemail. BARNES to WILLIAMS' voicemail, "Hey Ben, this is your boy man, Mike. Man give me a call dog."

3

12. On December 14, 2011, at approximately 5:55 p.m., a call was intercepted from 650-315-3907 to **TT-2** (Line 1186). WILLIAMS asked BARNES, "Where you at?" BARNES replied, "Menlo, trying to get to you." WILLIAMS asked, "Yeah, what you want? An eighth and two (1/8 of an ounce or 1/8 of a quarter ounce, and two ounces or two quarter ounces of crack cocaine depending on BARNES' relationship with WILLIAMS), what? I'm your UI[1]." BARNES to WILLIAMS, "I know doggie, I love you dog. Probably just one. Just one (one ounce, or one quarter ounce of crack cocaine)." WILLIAMS told BARNES, "As a matter of fact, check this out, I'm fixin to come that way over there by the old folks home man. I'm fixin to leave right now." BARNES replied, "Alright. Let me uh, let me look at somethin real quick man I might...(mumbles... possibly counting). Uh, yeah bring two 'em (two ounces, or two quarter ounces of crack cocaine)." WILLIAMS said, "Okay, I'm gonna call you when I get there, I'm moving over to the house right now." BARNES replied, "Alright."

13. At approximately 6:13 p.m., a call was intercepted from **TT-2** (Line 1198) to 650-315-3907. WILLIAMS to BARNES, "Hey man, I'm by Oakwood right now so man, you need to start movin." BARNES said, "Alright, alright, alright. I'm movin right now."

14. At approximately 6:16 p.m., call was intercepted from **TT-2** (Line 1199) to 650-315-3907. BARNES said to WILLIAMS, "I'm comin down Ivory, I'm gonna count on that corner, right... Where you at now?" WILLIAMS told BARNES, "Okay I'm right here by Kitty's Cleaners man I'm sittin on the corner (UI)..." BARNES responded, "Alright, you want me to make a u-turn and go towards the...the club (1340 Camellia Drive)? Or you wanna stop at Kitty's Corner (Kitty's Cleaners 910 Newbridge St.)?" WILLIAMS replied, "Yeah, right here, stop right here at the club that's where I'm at." BARNES said, "Alright I'll be there in about thirty seconds, one minute." WILLIAMS replied, "Okay."

15. On December 17, 2011, at approximately 1:18 p.m., a call was intercepted from **TT-2** (Line 1673) to 315-3907. BARNES said to WILLIAMS, "Ben, I need to see you..where you at, Doggie?" WILLIAMS responded, "Man, I'm at...I'm on my way to the house (1340 Camellia Drive) right now...I'm by the post office...UI." BARNES replied, "I'm at lil' Bruh house..over here in the Village..I'm finna get in my car and head over there to you." WILLIAMS said, "Alright, I'm here." BARNES

---

[1] Unintelligible

4

replied, "Aiight Doggie!"

16. At approximately 1:33p.m., a pole camera captured a black male, resembling the California DMV photograph of MICHAEL BARNES, walking up the driveway at 1340 Camellia Drive. At approximately 1:37 p.m., BARNES was observed walking down the driveway at 1340 Camellia Drive and talking to two black males.

17. On December 18, 2011, at approximately 5:35 p.m., a call was intercepted from 650-315-3907 to **TT-2** (Line 1830). WILLIAMS told BARNES, "I'm here buddy." BARNES replied, "Aight, I'm on my way...we got a few minutes."

18. At approximately 5:44 p.m., a pole camera captured a pickup truck park next to the driveway at 1340 Camellia Drive. A black male was observed getting out of the vehicle and walking up the driveway at 1340 Camellia Drive. At approximately 5:46 p.m., the black male was observed walking out of the driveway at 1340 Camellia Drive.

19. On December 24, 2011, at approximately 6:58 p.m., a call was intercepted from 650-315-3907 to **TT-2** (Line 2911). BARNES told WILLIAMS, "I'm out front dog, come see your boy." WILLIAMS responded, "Alright, what, one (one quarter ounce or one ounce of crack cocaine)?" BARNES replied, "Yea." WILLIAMS said, "I know."

20. On December 25, 2011, at approximately 6:49 p.m., a call was intercepted from **TT-2** (Line 3021) to 650-315-3907. BARNES said, "Hello?" WILLIAMS responded, "Yea, I'm here." BARNES replied, "Alright, I'll call you when I get over there." WILLIAMS said, "Alright."

21. At approximately 7:20 p.m., a call was intercepted from 650-315-3907 to **TT-2** (Line 3026). BARNES to WILLIAMS, "Big dog I'm turning by Garden supermarket, I'll be out front your house in a minute." WILLIAMS responded, "Alright, alright. The usual (the usual amount of crack cocaine depending on BARNES' established relationship with WILLIAMS)?" BARNES said, "Yea." WILLIAMS replied, "Alright, bye."

22. Based on my training and experience, based on consultation with other agents and local law

5

enforcement officers who are familiar with the East Palo Alto area, based on my review of other intercepted communications of others with WILLIAMS on TT-2, and based on my review of reports and surveillance, including direct surveillance of WILLIAMS and BARNES, I believe that the intercepted calls described above related to trafficking in cocaine base.

## VI.   CRIMINAL HISTORY

23.   BARNES was convicted for violation of California Health and Safety Code 11350 - Possession of a Controlled Substance on December 1, 1987 and convicted for violation of California Health and Safety Code 11352 - Transportation / Sale of a Controlled Substance on November 10, 1993.

## VII.   CONCLUSION

24.   Based on the foregoing facts, my training and experience, and consultation with other law enforcement agents with experience in drug trafficking investigations, I believe there is probable cause to believe that BARNES violated the following statute: Title 21, United States Code, Section 846, conspiracy to distribute and possess with intent to distribute a controlled substance.

DATED this 2th day of February 2012.

PANYA SOMNHOT
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this ___th day of February 2012.

HON. MARIA-ELENA JAMES
United States Magistrate Judge